UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOE XUAN NGUYEN,

    Plaintiff,

    v.

ING FINANCIAL ADVISERS LLC, *et al.*,

    Defendants.

CASE NO. C04-1310RSM

MEMORANDUM ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendants' Motion for Summary Judgment. (Dkt. #63). In this alleged employment discrimination action, defendants argue that plaintiff cannot support his hostile work environment claim because he suffered no race-based harassment and he failed to report the allegedly discriminatory conduct to anyone. Defendants further argue that plaintiff's disparate treatment claim fails as a matter of law because he was not qualified for his position, he was not replaced by a non-minority, and he was terminated for legitimate, nondiscriminatory reasons. Plaintiff, proceeding *pro se*, responds that summary judgment is not appropriate on either of his claims because he raises several genuine issues of material fact. (Dkt. #78). For the reasons set forth below, the Court disagrees with plaintiff, and GRANTS defendants' motion for summary judgment.

## II. DISCUSSION

MEMORANDUM ORDER
PAGE - 1

**A. Background**

This lawsuit arises from several incidences that occurred involving plaintiff and his various co-workers during the time period he worked for defendant Northern Life Insurance.[1] To the extent that there is a difference between the parties' versions of events, the Court views the facts most favorably to the non-moving party – on this motion, plaintiff.

Plaintiff, Hoe X. Nguyen, was employed by defendant Northern Life Insurance Company ("Northern Life") in Seattle, WA, from September 14, 1999 through May 11, 2001. Northern Life sold 403B insurance to the K-12 market, specifically, primary and secondary school teachers. Northern Life's Seattle office maintained two types of employees to provide technical support to its salespeople, Business Analysts and Programmers. Business Analysts ("BAs") tested computer applications and evaluated their performance in light of the salespeople's feedback. BAs worked with Programmers who had little or no contact with the salespeople, but focused more directly on the technical aspects of the computer applications.

Plaintiff is a Vietnamese-American who held a B.S. degree in Computer Science Engineering when he was hired by Northern Life as a Senior Programmer/Analyst. At the beginning of his employment, plaintiff worked under supervisor Kristen Cummings. When Ms. Cummings left Northern Life in or around May of 2000, Brenda Manning was promoted to take her place. Rick Green was Ms. Manning's supervisor.

Plaintiff asserts that, during his employment, he was considered to be a good Senior Programmer Analyst by his manager. He notes that he had two "rather good" annual performance evaluations, two merit salary raises, and one Bravo Award for his technical contribution to his Information Technology department. He also notes that he "got a first place" in one training class, and offered some good and constructive input to his senior co-worker for some of the technical

---

[1] Defendant Northern Life Insurance has since merged with its parent company, ReliaStar Life, and is no longer its own operating business entity.

MEMORANDUM ORDER
PAGE - 2

training classes.

Defendants assert that, during plaintiff's employment, plaintiff was rude to his co-workers and failed to comply with reasonable work requests. Defendants further assert that these were the reasons that Northern Life terminated plaintiff's employment on May 11, 2001.

Late in 2001, Northern Life Insurance began the process of dissolving its Seattle office in preparation for its merger with its parent company ReliaStar Life. By March of 2002, only about half of the staff remained. A skeleton staff continued to work through the summer. On October 1, 2002, Northern Life merged with ReliaStar. The Northern Life Insurance Seattle office no longer operates.

Plaintiff filed the instant lawsuit on or about May 6, 2004, in King County Superior Court. The case was subsequently removed to this Court. Plaintiff alleges that his discharge was a result of an act of racial discrimination. In support of that allegation, he refers to eight separate instances of allegedly discriminatory acts by his co-workers. Those acts will be discussed in more detail below.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could

MEMORANDUM ORDER
PAGE - 3

return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

### C. Plaintiff's Sur-Reply

As a threshold matter, the Court addresses plaintiff's sur-reply. On March 12, 2006, plaintiff filed a "reply in response to defendants' reply of March 10, 2006." (Dkt. #82). However, that sur-reply does not comply with the Court's Local Rules, and therefore, will not be considered on this motion for summary judgment.

This Court's Local Rules allow for the filing of a sur-reply in limited circumstances, and only for the purpose of requesting to strike certain material in the reply brief. *See* Local Rule CR 7(g). In addition, the party desiring to file a sur-reply must inform both this Court and the opposing party that he intends to file a sur-reply, and the sur-reply is limited to three pages in length. Local Rule CR 7(g)(1) - (3). Plaintiff did not file a sur-reply requesting to strike certain material in defendants' reply brief. Instead, he submitted his reply "to answer and clarify some items" that defendants raised. Additionally, plaintiff's sur-reply is six pages in length. Moreover, he filed the sur-reply two days after the instant motion had been noted for consideration, and the record does not indicate that he notified either the Court or opposing counsel of his intent to so file. Accordingly, the Court STRIKES plaintiff's sur-reply from the record as improper.

### D. Hostile Work Environment

MEMORANDUM ORDER
PAGE - 4

Defendants first argue that plaintiff's hostile work environment claim should be dismissed as a matter of law because plaintiff cannot demonstrate that the alleged harassment was so severe or pervasive that it can support such a claim. (Dkt. #63 at 5). Defendants further argue that, regardless of whether the harassment was severe or pervasive, plaintiff failed to report the acts of which he complains to anyone until after he was terminated. Plaintiff answers that genuine issues of material fact pertain to his claim, and therefore, summary judgment is not warranted. (Dkt. #78 at 2-). For the reasons set forth below, the Court disagrees with plaintiff.

The United States Supreme Court has instructed that a hostile work environment violates an employee's right to work in an environment free from discriminatory "intimidation, ridicule and insult." *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To establish a *prima facie* hostile work environment claim under Title VII, plaintiff must raise a triable issue of fact as to whether (1) he was "subjected to verbal or physical conduct" because of his race, (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)). The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

The Court's determination of whether a hostile environment exists requires an examination of the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See Faragher*, 510 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 23); *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001); *Brooks*, 229 F.3d at 923.

When looking at the severity or pervasiveness of an act or acts, the Ninth Circuit has

MEMORANDUM ORDER
PAGE - 5

explained that "discriminatory acts [that] were not always of a nature that could be identified individually as significant events" may nonetheless be "significant, both as a legal and as a practical matter" in their "cumulative effect." *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998). Summary judgment is appropriate when the undisputed evidence shows that plaintiff cannot meet the severe or pervasive standard. *See Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000). Thus, the Court turns to plaintiff's allegations of discriminatory treatment.

In the instant case, plaintiff asserts that the evidence before the Court on the following incidents demonstrates that he was subject to a hostile work environment because of his race:

a. Mr. Jeryl Milner

Plaintiff first alleges that a Northern Life executive, whom he names in his Second Amended Complaint as Mr. Jeryl Milner [sic], discriminated against him at a company party in the lower level of the Space Needle in December 2000.[2] Plaintiff claims that Mr. Milner "conspicuously performed an act of discarding plaintiff in a company farewell party by bypassing (and not giving his speech) at the table where the plaintiff sat alone." Plaintiff further asserts that this action sent a strong message to other company employees that plaintiff was not favored.

As evidence of this message of disfavor, plaintiff points to an incident involving Mr. Milner and co-worker Greg Bolin. Plaintiff alleges that one day the three of them were riding in the elevator together and Mr. Bolin would not say good morning to him until Mr. Milner got off the elevator.

b. Hispanic Woman in Company Training

---

[2] Plaintiff describes Mr. Jeryl Milner [sic] as a Hispanic-American employee of Northern Life. However, it is not clear that plaintiff has correctly identified the person allegedly involved in the incident. The record indicates that a Jeryl Millner worked for Northern Life as the Chief Financial Officer. However, Jeryl Millner is a woman, and she is not Hispanic. Furthermore, in his EEOC Complaint, plaintiff first identified the person allegedly involved as Larry Mills. One of defendants' witnesses, Richard Pinches, remembers a party involving Jerry Mills in December 2000. Thus, it is not clear who was involved in the incident described by plaintiff. For ease of reading, the Court will refer to that person as plaintiff does – Mr. Milner.

MEMORANDUM ORDER
PAGE - 6

Plaintiff next alleges that an Hispanic female employee, whose name he does not know, showed her hostile attitude toward him by giving him a threatening look in the company's training room.[3]

c. Mr. Richard Pinches

Plaintiff next alleges that Richard Pinches, an "Hispanic co-worker," ridiculed plaintiff by pointing at him during a training class when the instructor asked if anyone needed help.[4]

d. Mr. Kevin Eno

Plaintiff next alleges that his co-worker, Kevin Eno, arbitrarily "blamed things" on plaintiff, and asked too many questions about one of the computer programs they used. Plaintiff also contends that Mr. Eno should have accepted a draft of a technical specification sheet that he had written, but instead Mr. Eno refused it because it had too many bold-faced words in the document, and then "arbitrarily" reported the problems to their supervisor.

e. Mr. Stan Pinkerton

Plaintiff next alleges that his co-worker, Stan Pinkerton, treated him rudely when he was an On Call Programmer. Plaintiff asserts that Mr. Pinkerton solved a problem on his own, instead of calling plaintiff to solve it for him.

f. Ms. Brenda Manning

Plaintiff next alleges that his co-worker and later supervisor, Brenda Manning, had a reputation for rudeness and was rude to him on several occasions. He asserts that she had a tendency to "take sides and protect other non-minority employees" like Mr. Eno and Mr. Pinkerton.

g. Ms. Marlene Mills

---

[3] The Court again notes that plaintiff may have misidentified the person allegedly involved in this incident. Throughout the record, plaintiff describes various employees as Hispanic. However, not one of the witnesses on this record recalls any Hispanic female employees at Northern Life while plaintiff was employed there. Moreover, one of the people identified by plaintiff as Hispanic, Mr. Pinches, is actually of Scottish-English descent.

[4] As already noted, Mr. Pinches is not Hispanic.

MEMORANDUM ORDER
PAGE - 7

Finally, plaintiff alleges that an "Hispanic-American Human Resource manager," Marlene Mills, showed her discriminatory attitude toward plaintiff in his last meeting with them when she refused to consider his defenses for her two allegedly false reasons for discharge. In particular, plaintiff asserts that Ms. Mills did not ask him to show her the proof for the technical specification document that he had modified, and she did not give any consideration to his allegations of discriminatory conduct by Mr. Pinches and rudeness by Ms. Manning.

Even when viewed in the totality of the circumstances, this Court finds that none of these incidents can support plaintiff's claim of hostile work environment. First, plaintiff explicitly testified at deposition that, with respect to Mr. Milner, Mr. Bolin, the anonymous Hispanic woman at the computer training class, Mr. Pinches and Mr. Eno, he has no direct evidence of racial discrimination, and that it is only his speculation that their actions against him were racially motivated. The Court notes that conclusory statements without factual support are insufficient to defeat a motion for summary judgment. *National Steel Corp. v. Golden Eagles Ins. Corp.*, 121 F.3d 496, 502 (9th Cir. 1997). Furthermore, as the Ninth Circuit Court of Appeals explained in *Carmen v. San Francisco Unified School District*, 237 F.3d 1026 (9th Cir. 2001):

> [a] plaintiff's belief that a defendant acted from an unlawful motive, without evidence to support that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent. . . . It is not enough for a witness to tell all she knows; she must know all she tells.

*Carmen*, 237 F.3d at 1028. Similarly, with respect to Mr. Pinkerton and Ms. Manning, although plaintiff continues to assert that their behavior toward him was racially motivated, he produces no evidence, other than his own conclusions, that either person's actions were either harassment or racially motivated. Thus, the Court finds that the conclusory allegations asserted by plaintiff both in his Second Amended Complaint, and in his Response to the instant motion, do not create a genuine issue of triable fact to defeat summary judgment.

Second, the Court finds that no reasonable person could find that any of these actions were hostile or offensive, or that this conduct was sufficiently severe or pervasive to alter the conditions of

MEMORANDUM ORDER
PAGE - 8

the plaintiff's employment and create an abusive work environment. Plaintiff may be angry or frustrated that he did not have a strong social relationship with many of his co-workers, but that is not enough to create a valid claim of hostile work environment.

Furthermore, while plaintiff attempts to raise several issues of material fact with respect to the incidents described above, he cannot do so simply by asserting factual statements that directly contradict his deposition testimony. *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). For example, plaintiff argues about defendants' statement that a gentleman was sitting with him at his table at the Space Needle party. He claims the gentleman was not as his table when Mr. Milner passed by, although he testified at deposition that he was sitting with a gentleman "until the last minute." He also argues that he was the first person to initiate a greeting with Mr. Bolin in the elevator, but testified at deposition that he had not initiated a greeting. To the extent that either of these facts could even be considered material, the Court notes that "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy,* 952 F.2d at 266.

Finally, the Court notes that plaintiff has failed to provide a basis to hold Northern Life liable for the actions of its employees because he did not report any of the allegedly discriminatory action taken against him to a manager. "Where harassment by a co-worker is alleged, the employer can be held liable only where 'its own negligence is a cause of the harassment.' Title VII liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct." *Swenson v. Potter*, 271 F.3d 1184, 1191-92 (9th Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). Furthermore, an employer cannot be held liable for misconduct of which it is unaware. *See Brooks*, 229 F.3d at 924; *see also Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 811 (7th Cir. 2000). The employer's liability, if any, runs only from the time it "knew or should have known about the conduct and failed to stop it." *Ellerth*, 524 U.S. at 759; *see also Brooks*, 229 F.3d at 924.

In the instant case, plaintiff stated at deposition that he did not report to anyone at Northern

MEMORANDUM ORDER
PAGE - 9

Life that he believed he was being treated differently because of his race. Plaintiff had apparently discussed complaints by Mr. Eno and Mr. Pinkerton with his supervisor, Ms. Manning; however, plaintiff did not allege that the actions taken by either of those people were racially motivated until after he was terminated. Moreover, plaintiff met with Mr. Eno in order to improve work place relations after he complained. Therefore, there is no evidence that Northern Life was negligent in addressing any complaints by plaintiff, or that it was even aware that plaintiff believed he was being subjected to racial discrimination in the work place. Thus, defendants cannot be held liable in this situation.

Accordingly, this Court finds that plaintiff has not raised a genuine issue of material fact regarding his hostile work environment claim, and therefore, plaintiff's claim should be dismissed.

**E. Title VII Discrimination/Disparate Treatment**

Defendants next argue that plaintiff cannot maintain a disparate treatment claim, because he fails to establish several elements of his *prima facie* case, including that he was qualified for his position and that his job was given to a person outside a protected class. The Court agrees with defendants.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1) (2005). A person suffers disparate treatment in his employment "'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)).

To establish a *prima facie* case under Title VII, plaintiff must offer proof that: (1) he belongs to a protected class; (2) he was qualified for the position he held; (3) he was terminated; and (4) the job went to someone outside the protected class. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993);

MEMORANDUM ORDER
PAGE - 10

*McGinest*, 360 F.3d at 1122.

Title VII discrimination claims are subject to a two-part, burden-shifting test. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018 (9th Cir. 2006). Establishing a *prima facie* case creates a presumption that the plaintiff's employer undertook the challenged employment action because of the plaintiff's race. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To rebut this presumption, the defendant must produce admissible evidence showing that the defendant undertook the challenged employment action for a "legitimate, nondiscriminatory reason." *Id.* If the defendant does so, then "the presumption of discrimination 'drops out of the picture'" and the plaintiff may defeat summary judgment only by satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c). *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). In the context of employment discrimination law under Title VII, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's race. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

The Supreme Court has identified two methods by which a plaintiff claiming disparate treatment can meet the standard of proof necessary to defeat summary judgment. First, the plaintiff may offer evidence, direct or circumstantial, "that a discriminatory reason more likely motivated the employer" to make the challenged employment decision. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Alternatively, the plaintiff may offer evidence "that the employer's proffered explanation is unworthy of credence." *Id.* The Ninth Circuit Court of Appeals has clarified that with respect to the second method, a plaintiff may defeat a defendant's motion for summary judgment by offering proof that the employer's legitimate, nondiscriminatory reason is actually a pretext for racial discrimination. *See McGinest*, 360 F.3d at 1123; *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1067 (9th Cir. 2004); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641-42 (9th Cir. 2004); *Wallis*, 26 F.3d at 889-90. However, the Court of Appeals reminds district courts that a

MEMORANDUM ORDER
PAGE - 11

plaintiff may not defeat summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action. *See Wallis*, 26 F.3d at 890; *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (concluding that despite the plaintiff's claims that she had performed her job well, that "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").

In the instant case, plaintiff has failed to establish a *prima facie* case of intentional discrimination. While plaintiff can establish that he is a member of a protected class based on race, and he did suffer termination from his employment position, defendant argues that he has met none of the other elements establishing a *prima facie* case. The Court agrees. For example, the plaintiff has completely failed to show that his job went to someone outside the protected class. Indeed, at the time plaintiff's employment was terminated, Northern Life began to dismantle its Seattle office, and began laying off its other employees or transferring them to other offices. No one was hired to replace plaintiff's position.

Similarly, the Court finds that plaintiff has failed to provide evidence that others who were similarly situated, but not members of a protected class, were treated better than he was. Plaintiff points to his supervisor, Ms. Manning, as the appropriate comparator, arguing that she was rude to other employees but was not terminated, while he was terminated in part on the basis that he was rude to his co-workers. While defendant argues that Ms. Manning is not an appropriate comparator because she was plaintiff's supervisor, the Court also recognizes that, in determining whether another employee is similarly situated with a plaintiff, the Ninth Circuit does not require that the employees be identically situated. Rather, the comparative employee must be similarly situated in all material respects. *Bowden v. Potter*, 308 F. Supp.2d 1108, 1116-17 (N.D. Cal. 2004). In this case, Ms. Manning herself acknowledges that she had a rudeness problem that was brought to her manager's

MEMORANDUM ORDER
PAGE - 12

attention. In addition, at the time her coworkers complained of the problem she was in the same position as plaintiff was at the time of his termination. Thus, for purposes of this analysis, the Court accepts that Ms. Manning was a similarly situated employee as plaintiff.

However, the Court finds that Ms. Manning was not treated any differently than plaintiff. During the time that she worked as a Senior Programmer, she was informed by her supervisors that she would need to address her rude behavior before she could advance in the company. By all accounts in the record, she attended anger management training, and resolved her problem. She was subsequently promoted to management. In contrast, plaintiff was informed by Ms. Manning that his co-workers had complained that he was rude to them, and in particular noted that it was important to have a cooperative working relationship with the BAs in order to perform his own job functions adequately. There is nothing in the record that indicates an effort on plaintiff's part to improve his behavior toward his co-workers.

Even if plaintiff was able to make out a prima facie case of disparate treatment, the Court finds that defendants have provided legitimate, nondiscriminatory reasons for plaintiff's employment termination, and plaintiff has failed to rebut those reasons. Northern Life informed plaintiff that he was being terminated because he refused to cooperate with reasonable work requests, and his failure to correct a long term pattern of rudeness to his coworkers that his manager had warned him about on a number of occasions. Plaintiff produces no competent evidence that these reasons were merely pretextual. Instead, he relies solely on his subjective belief that he was being terminated because of his race. As the Court noted above, plaintiff may not defeat summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action, *Wallis*, 26 F.3d at 890, nor may plaintiff create a genuine issue of material fact by relying solely on his subjective belief that the challenged employment action was unnecessary or unwarranted. *See Bradley*, 104 F.3d at 270.

Accordingly, the Court finds that plaintiff has failed to raise an issue of genuine material fact with respect to his disparate treatment claim, and therefore, that claim should be dismissed.

MEMORANDUM ORDER
PAGE - 13

**F. Pendent State Claims**

Finally, plaintiff has also raised a claim for relief under Washington's Law Against Discrimination, RCW 49.60, *et seq.* ("WLAD"). His claim rests on the same facts discussed above. RCW 49.60.180 establishes that discrimination on the basis of race by an employer is an unfair practice. Employers may not discriminate against "any person in . . . terms or conditions of employment because of . . . race. . . ." RCW 49.60.180(3).

Washington's employment discrimination law largely parallels federal law under Title VII. Accordingly, this Court's analysis above also applies to plaintiff's claim under Washington law. *Coghlan*, 413 F.3d at 1094; *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *Jones v. Kitsap County Sanitary Landfill, Inc.*, 60 Wn. App. 369, 371 (1991). Thus, for the same reasons, this Court finds that plaintiff's state law claim should be dismissed.

## III. CONCLUSION

Having reviewed defendants' motion for summary judgment (Dkt. #63), plaintiff's opposition (Dkt. #78), defendants' reply (Dkts. #80), the declarations and evidence in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1) Defendants' motion for summary judgment (Dkt. #63) is GRANTED in its entirety, and plaintiff's claims are DISMISSED with prejudice. This case is now CLOSED.

(2) The Clerk shall forward a copy of this Memorandum Order to plaintiff and all counsel of record.

DATED this 21st day of April, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

MEMORANDUM ORDER
PAGE - 14